**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                  Case No. 6:08-cr-270-Orl-31KRS

**NATHANIEL GREEN**

_____

**ORDER**

Defendant Nathaniel Green ("Green") challenges the Government's use of a prior state conviction to enhance his sentence.

**I.    Background**

On August 11, 2004, Green entered pleas of no contest and was convicted in state court on charges of possession of cocaine, attempted evidence-tampering, and attempted bribery. He was sentenced to ten months of imprisonment. On February 2, 2009, after a trial, he was convicted of violating 21 U.S.C. § 841(a)(1) (crack cocaine) and 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon). The Government seeks to enhance his sentence on these latter convictions based, in part, on the 2004 state court convictions. If the Government is able to do so, Green faces a mandatory life sentence.

Green contends that the 2004 convictions are invalid and cannot be used to enhance his sentence. Although he signed a written plea agreement spelling out his rights and engaged in a colloquy on the issue with the trial court judge, he argues that the trial judge failed to notify him of

several of the rights he was waiving, and that a lack of reading ability and a low IQ prevented him from understanding the written agreement.

## II. Legal Standards

### A. Challenges to prior convictions

Green's claim triggers the provisions of 21 U.S.C. § 851, which sets forth the procedure for challenging prior convictions that the Government intends to use to increase punishment. That statute requires the Government, prior to trial or a plea, to file an information listing the prior convictions upon which it intends to rely for an increased sentence. 21 U.S.C. § 851(a)(1). Subsection (c) of Section 851 further provides that

> (1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. . . . The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. . . . **Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.** . . .
>
> (2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. **The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response.**

21 U.S.C. § 851(c) (emphasis added).

### B. Plea validity

The issue of whether there has been an effective waiver of a federal constitutional right is governed by federal standards. *See Douglas v. Alabama*, 380 U.S. 415, 422 (1965). "[F]or a guilty plea to be valid and enforceable, '[t]he record must show, or there must be an allegation and evidence which shows, that an accused . . . intelligently and understandingly' waived the right implicated by

a guilty plea." *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). The rights implicated by a guilty plea include "the right against self-incrimination, the right to trial by jury, and the right to confront one's accusers." *Id.*

### C. Pleading requirements

Rule 11(b) of the Federal Rules of Criminal Procedure governs consideration and entry of pleas in federal court. It provides, in pertinent part, that

(1) Advising and Questioning the Defendant.

Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); and

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

(2) Ensuring That a Plea Is Voluntary.

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

## III. Application

### A. <u>Invited error and waiver</u>

At the outset, the Government argues that Green is precluded from making his invalidity arguments for two reasons. First, because any error as to the knowing and voluntary nature of his no contest plea was invited by him, in that he affirmatively testified to the state court judge that he knew and understood all the rights that he was waiving. Second, the Government argues that Green waived the right to challenge the validity of the 2004 convictions because he stipulated to the fact of those convictions during his trial in the instant case.

Neither argument is persuasive. The doctrine of invited error is not applicable in this case. Within this Circuit, the doctrine of invited error is implicated "when a party induces or invites the district court into making an error." *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998). For example, if a defendant agrees to the introduction of a taped statement, he cannot subsequently

complain that the jury should not have been allowed to hear the statement. *See United States v. Jernigan*, 341 F.3d 1273, 1289-90 (11th Cir. 2003). In contrast, a defendant who is unaware of the consequences of a plea or of the rights being given up is not in a position to register an objection. A defendant in such a situation who incorrectly tells the Court that his plea is knowing is, at most, failing to correct an error, rather than inviting it.

As for the waiver argument, Green stipulated at trial only to the fact that he had been convicted in 2004. He did not stipulate that the pleas resulting in those convictions had been made knowingly and voluntarily. Because it is the knowing and voluntary nature of those pleas that is now at issue, rather than the fact of his convictions, the stipulation does not operate as a waiver.

### B. State vs. Federal Challenge

The statute clearly permits a defendant to challenge the use of his 2004 convictions on the grounds that they were "obtained in violation of the United States Constitution." In his motion, Green argues that those convictions are invalid under both federal law *and* state law. And he further argues that, because 21 U.S.C. § 851 only requires that he bear the burden of proof in regard to a claim of invalidity under the United States Constitution, the Government must demonstrate, beyond a reasonable doubt, that his convictions were valid under Florida law.

However, criminal defendants have no constitutional right to collaterally attack previous state convictions that are to be used to enhance a federal sentence. *Custis v. U.S.*, 511 U.S. 485, 496 (1994).[1] Thus, any authority for Green to challenge the use of his 2004 convictions must be found in 21 U.S.C. § 851 itself. And there is no language in that statute authorizing a defendant to claim that

---

[1] The *Custis* court noted one exception to this rule – cases where the defendant contended that he had been denied representation of counsel. *Id.*

-5-

a conviction was obtained in violation of state law. Further, neither party has provided the Court with case law in which a federal court assessed a previous state court conviction using a state law standard, rather than a federal constitutional standard, before permitting that conviction to be used to enhance a sentence.[2]

Based on this review of the case law, it would appear that Congress did not intend to permit a defendant to raise a state-law challenge to a previous state court conviction under 21 U.S.C. § 851. Morever, if Congress did intend to permit such challenges, it would make no sense to utilize a stricter standard for them – *i.e.*, to make a defendant prove, by a preponderance of the evidence, that a conviction fell short of the federal constitutional minimum, while making the federal prosecutor prove, beyond a reasonable doubt, that the conviction met state requirements.

However, the Court need not resolve this issue, as Green is not advancing an independent state claim here. Green's state law challenge is, at its core, the same as his federal constitutional challenge. In both instances, he contends that the trial court judge who took his no contest pleas failed to fully advise him of the rights he was giving up by doing so, resulting in a plea that was not knowing, intelligent and voluntary, as required by *Boykin v. Alabama*, 395 U.S. 238 (1969). Indeed, Green notes in his motion that the Florida standard for judging the validity of a plea is based on the federal

---

[2]The Court's research uncovered only one case in which this was permitted. In *U.S. v. Randel*, 8 F.3d 1526 (10th Cir. 1993), the appellate court affirmed the district court's determination, pursuant to 21 U.S.C. § 851, that the defendant's previous state court conviction was valid under state law (as well as the United States Constitution) and therefore could be used to enhance his federal sentence. However, *Randel* was decided prior to *Custis*, and the appellate court did not consider the issue of whether a state law review was authorized by 21 U.S.C. § 851. In addition, the Court notes that in *U.S. v. Black*, Case No. 6:01-cr-118-Orl (M.D.Fla. 2001), Chief Judge Conway stated that under 21 U.S.C. § 851 the Government ought to bear the burden of establishing validity under state law. However, the defendant in that case met his burden of establishing the invalidity of his conviction under federal law, so Chief Judge Conway did not assess the conviction's validity under state law.

standard, and that the pertinent Florida Rule of Criminal Procedure, 3.170(k) (which governs taking of pleas), is "[c]onsistent with *Boykin*." (Doc. 147 at 9). There is no justification for permitting Green to make the same challenge under two different guises. Doing so would also contravene the intent of Congress, by permitting defendants to raise constitutional challenges as state law challenges and avoid the evidentiary burden required by 21 U.S.C. § 851(c)(2). Furthermore, the question of whether a plea was valid under state law (*i.e.*, knowing and voluntary) is a question of law, not a question of fact that would be subject to the "beyond a reasonable doubt" standard of 21 U.S.C. § 851(c)(1). Therefore, the Court will only consider Green's claim that his conviction was obtained in violation of the United States Constitution.

### C. Invalidity

Green argues that the trial court judge failed to make sure he understood all of the consequences of his no-contest pleas. Prior to acceptance of those pleas, Green engaged in the following colloquy with the trial court judge:

THE COURT: Tell me your name, please.

THE DEFENDANT: Nathaniel Green.

THE COURT: Mr. Green, I have a written plea from in my hand. Did you read and sign it?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Do you read, write, and understand English?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Did you have a chance to discuss it with Mr. Waggoner, your attorney?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, Ma'am.

THE COURT: Do you understand you're giving up your right to remain silent, and the right to a trial by jury, the right to present any evidence or defense on your own behalf?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Has anyone forced, threatened, or promised you anything, except what Mr. Waggoner has put in the record?

THE DEFENDANT: No, Ma'am.

THE COURT: Possession of cocaine is a third degree felony, attempted tampering with physical evidence is a third degree felony, bribery is a third degree felony, all punishable by up to five years in prison, five years probation, $5,000 fine.

Are you under the influence of any drugs, medication, alcohol, or disability that would prevent you from understanding what you are doing?

THE DEFENDANT: No, Ma'am.

THE COURT: Have you ever been declared mentally incompetent by any Court?

THE DEFENDANT: No, Ma'am.

THE COURT: Do you understand that if you are not a U.S. citizen you can be deported as a result of this plea?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Are you entering the plea freely and voluntarily, understanding your rights?

THE DEFENDANT: Yes, Ma'am.

THE COURT: And by your guilty plea, are you – oh, you're not pleading guilty, you're pleading no contest, is that right?

MR. WAGGONER: Just for the purpose of appeal, your honor.

Green contends that the trial court failed to advise him of numerous rights that he was waiving by pleading no contest, including the privilege against self-incrimination and the right of confrontation, as required by *Boykin*. Green also contends that the colloquy failed to satisfy other requirements, in that it did not address numerous issues mandated by the pertinent rules of criminal procedure, including his right to persist in a "not guilty" plea; his right to assistance of counsel, including at trial; his right to compel witnesses; and the complete terms of his plea agreement with the state.

Green admits signing a written plea agreement (Doc. 147-3) in connection with the no contest pleas. That agreement included the following language:

I understand the following paragraphs concerning my trial rights:

a. that if the Court accepts my plea(s), I give up my right to a trial, at which I would have had the following rights:

(I) to have a jury determine whether I am guilty or not guilty;
(ii) to see and hear the witnesses testify, and to have my lawyer question them for me;
(iii) to subpoena & present witnesses and items of evidence in my defense, and to present any defense I might have to the jury;
(iv) to testify or to remain silent; and
(v) to require the prosecutor to prove my guilt by admissible evidence beyond any reasonable doubt before I can be found guilty by the jury.

. . .

d. that I have read the information/indictment in this case and I understand the charge(s) to which I enter my plea(s). My lawyer has explained to me the maximum penalty for the charge(s), the essential elements of the crime(s) and possible defenses to the crime(s), and I understand these things.

7. My education consists of 10th grade. I am not under the influence of any drug, medication or alcohol at the time I sign this plea. I am not suffering from any mental problems at this time which affect my understanding of this plea.

. . .

> 9. I have read every word in this written plea. I have discussed this written plea with my lawyer and I fully understand everything contained in it.

The written plea agreement also spelled out the terms of the plea deal with the state. (Doc. 147-3 at 1).

Although the written plea agreement appears to address all of the topics left out of the colloquy, the Defendant argues that it was not enough to render his plea intelligent and knowing because of other issues that prevented him from understanding its terms. Defendant's counsel introduced into evidence Green's school records, which show him dropping out at the beginning of the ninth grade. Those records also show that his performance on the Stanford Achievement Tests Series Eight Edition, which was administered to him in the 4th grade, put his reading score at the 19th percentile – *i.e.*, lower than approximately 80 percent of comparable children.

Counsel also presented evidence from a neuropsychologist, Dr. Eric Mings ("Mings"), who performed a psychological assessment of Green. Dr. Mings conducted a series of tests, including the Wechsler Adult Intelligence Scale III, Wechsler Individual Achievement Tests Reading Subtests, and the Test of Memory Malingering, the latter of which is used to detect whether subjects are intentionally underperforming on the other cognitive function exams. Based on those tests, Dr. Mings opined that Green has an IQ score in the mid-70s, which would place his intellectual abilities in approximately the 3d percentile of the population (*i.e.*, lower than approximately 97 percent of the population). Dr. Mings also concluded that Green's reading skills were at approximately the third grade level. And Dr. Mings found no evidence that Green was attempting to underperform on the tests, describing his performance on the Test of Memory Malingering as "flawless and consistent with an individual who was cooperative with the assessment."

Dr. Mings also assessed the complexity of the written plea agreement Green signed in connection with the 2004 convictions, determining that the Flesch-Kincaid Grade Level Score for the agreement was a 10.8. Contrasting this result with Green's third-grade reading skills, Dr. Mings said he was "confident that [Green] lacks the capacity to comprehend" the written plea agreement."

Aside from pointing out Green's obvious motive to "throw" these exams, the Government has not challenged the test results or Dr. Mings' conclusions.

The Defendant contends that this case is similar to *Koenig v. State*, 597 So. 2d 256 (Fla. 1992), and requires the same result. Koenig entered a plea of no contest to charges of first-degree murder, armed burglary, and armed robbery. *Id.* at 257. He was subsequently sentenced to die on the murder charge and was given consecutive life terms for the burglary and robbery counts.[3] *Id.*

On appeal, Koenig argued that the record failed to show that plea was a voluntary and intelligent waiver of his constitutional rights. *Id.* Citing to *Boykin*, among other cases, the Florida Supreme Court agreed. The Court found that the hearing transcript did not affirmatively show that Koenig knowingly and intelligently entered his plea of no contest. The trial judge failed to even mention numerous rights that Koenig was waiving during the plea colloquy, and although Koenig signed a plea form that detailed the rights he was giving up by pleading, the court found that

> there is nothing in the record to demonstrate that he could understand the form he signed or what his attorney told him about it. The record does not reflect the extent of Koenig's education or whether he can even read.

---

[3]The Government argues that the Court in *Koenig* applied a higher standard in reviewing the plea due to it being a death penalty case. However, the *Koenig* court never said it was applying a higher standard, and the standard applied in *Koenig* has been followed in non-capital cases. *See, e.g., Watson v. State*, 667 So. 2d 242 (Fla. 1st DCA 1995) (following *Koenig* and permitting defendant to withdraw no contest pleas to burglary and theft charges where the record failed to show the pleas were intelligent and voluntary).

*Id.* at 258.

However, this is not a case like *Koenig*. There is a great deal of evidence in this record suggesting that Green could understand the form and what his attorney told him about it. Green himself testified that he read and wrote in English, and understood it. He testified that he read the plea form, had the opportunity to discuss it with his attorney, understood it and had no questions about it. He also signed the plea form, which indicated that he had read every word in the plea agreement, had discussed it with his attorney, and understood it, and that he had a tenth grade education.

In addition to the representations made by Green, the plea form contains the following certification signed by his attorney:

> **I, Defendant's Counsel of Record, certify that: I have discussed this case with the defendant, including his/her trial rights**, the nature of the charge(s), essential elements of each, the evidence against him/her of which I am aware, the possible defenses he/she has, the maximum penalty for the charge(s), the sentencing guidelines, and his/her right to appeal. No promises have been made to the defendant other than as set forth in this form or on the record. **I believe he/she fully understands this written plea, the consequences of entering it, and that the defendant does so of his/her own free will.**

(Doc. 147-3) (emphasis added). Thus, although Green has presented evidence to the contrary, there is substantial evidence suggesting that Green understood what he was signing, and therefore understood the rights he was waiving, even those not addressed during the plea colloquy.

In addition to the evidence provided by the written plea agreement he signed, Green's conduct during the colloquy suggests that he understood what was going on, and what he was giving up when he pled no contest. All of his responses to the judge's inquiries were appropriate and on point, with no questions, missteps, or other evidence of a lack of comprehension.

Moreover, evidence produced in the instant case suggests Green had the capacity to understand the consequences of his plea as detailed in the written plea agreement, by his attorney, and by the trial court judge. At trial, there was abundant evidence that Green had operated a substantial criminal enterprise for a long period of time – activities that, while not requiring genius, are at least unlikely to be accomplished by a person with dramatically below-average intellectual ability. At the evidentiary hearing on this motion, the Government presented evidence of Green's jailhouse phone calls, in which he demonstrated a familiarity with at least some facets of the federal judicial system, including federal sentencing guidelines. The Government also presented the testimony of a confidential informant who spent a significant amount of time with Green, and who testified that in his opinion Green was a very intelligent person with an excellent memory, who kept all the records of his drug operation in his head, rather than on paper. In addition, the fact that Green had entered more than a dozen criminal pleas prior to August 2004 lends weight to the conclusion that, by the time he entered the no contest pleas at issue here, Green fully understood their consequences – or at least those consequences that were not discussed during the plea colloquy.

In light of the foregoing, the Court finds that Green has not met his burden of showing that

his 2004 pleas were procured in violation of the United States Constitution. Accordingly, it is hereby

**ORDERED** that Green's Motion to Challenge the Government's Use of Prior State Convictions to Enhance Mandatory Sentence (Doc. 147) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 7, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
NATHANIEL GREEN